IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | 8:05CR131 |
| ) | |
| vs. ) | REPORT AND |
| ) | RECOMMENDATION |
| PABLO REZA LANDIN, ) | |
| ) | |
| Defendant. ) | |

    This matter is before the Court on the motion to suppress by defendant Pablo Reza Landin (Filing No. 185). Landin is charged in the Indictment along with co-defendants Jesus Padilla, Raul Jiminez, Benjamin Sukup, Mollie Moller, and Scott D. Freese with a conspiracy to distribute and possess with intent to distribute in excess of 500 grams of methamphetamine in violation of 21 U.S.C. § 846. Landin seeks to suppress all evidence and statements obtained during, and as fruits of, a search by law enforcement authorities at Landin's residence at 919 South 6th Street, Norfolk, Nebraska, on March 29, 2005.

    The Court held an evidentiary hearing for the motion to suppress on March 9, 2006. Landin was present at the hearing along with his counsel, Hugh I. Abrahamson and Shaun F. Downey. The government was represented by Assistant U.S. Attorney Joe W. Stecher. Chandler Thompson, a certified interpreter in the Spanish language, was available as an interpreter by remote telephone hook-up. At the hearing, the Court heard the testimony of Special Agent Gregory Beninato (Agent Beninato) and the defendant Landin. The Court received into evidence Exhibit 1, an application and affidavit for a search warrant, a search warrant, and a return and inventory. A transcript (TR.) was prepared and filed in this matter on March 20, 2006 (Filing No. 200). There was no post-hearing briefing.

**FINDINGS OF FACT**

    The grand jury returned a sealed indictment against Landin and his co-defendants on March 24, 2005, and a warrant was issued for Landin's arrest on March 26, 2005 (Filing No. 1). On March 28, 2005, FBI Special Agent Michelle M. Stevenson presented an application and affidavit to the undersigned magistrate judge requesting a search warrant

be issued for a search of the premises, garage, and vehicles at Landin's residence at 919 South 6th Street in Norfolk, Nebraska (Exhibit 1).  The 12-page affidavit detailed a methamphetamine trafficking conspiracy, including Landin, which was transpiring in the Norfolk, Nebraska area (Exhibit 1).  The affidavit set forth details from two federal court wire interception orders during the period of October 2004 through the date of the affidavit Exhibit 1).  Landin's telephone conversations were intercepted during February 5, 2005 through March 4, 2005 (Exhibit 1).  The affidavit detailed those conversations as relating to drug trafficking activity in relation to the residence at 919 South 6th Street (Exhibit 1).  The affidavit set forth reasons to believe drugs, drug paraphernalia, records, etc. would be found at the locations (Exhibit 1).

The search warrant was executed on the morning of March 29, 2005, at 919 South 6th Street in Norfolk, Nebraska (TR. 4).  The agents knocked on the door and announced in both Spanish and English that they were the police and had a search warrant (TR. 4). After hearing voices inside and not receiving a response at the door, the door was forcibly entered by the officers with weapons drawn (TR. 4).  Once inside the residence, Agent Beninato, who is proficient and certified in the Spanish language, made contact with Landin in the living room (TR. 5).  Agent Beninato informed Landin that the officers were the FBI and police and Landin was to get on the floor (TR. 5).  Landin complied (TR. 5).  Landin was not advised of his *Miranda* rights at that time (TR. 6).  Landin was asked if there was anything dangerous in the house that would be harmful to officers (TR. 6).  Landin said there was gun in the closet (TR. 6).  After the officers secured the house, the subjects in the house were separated (TR. 7).  Landin was taken to a bedroom, where Agent Beninato advised Landin of his *Miranda* rights in Spanish (TR. 7).   After stating he understood his rights, Landin stated he wanted to cooperate and answered Agent Beninato's questions (TR. 8).  Landin denied knowledge of any controlled substances in the residence (TR. 9). After the search of the residence, Landin was transported to Omaha, Nebraska (TR. 8). During the ride to Omaha, Landin brought up the firearm and asked if it was illegal for him to possess a firearm and made statements to the effect that the firearm was legal in Mexico and Landin was not sure if it was legal in the United States (TR. 8).

Landin testified that officers burst into the house with guns drawn and he got down on the floor when told (TR. 21). Landin stated the officers were screaming and yelling in both Spanish and English (TR. 21-22). Landin recalls being asked if there were any drugs or weapons in the house, being told the officers had a search warrant, and being told that a dog was on the way (TR. 22). Landin did not recall Agent Beninato showing him a piece of paper with Landin's rights on it or advising him of any rights (TR. 23-24).

Having observed the witnesses and their demeanor and having considered the testimony in light of all of the other evidence, the Court credits Agent Beninato's version of the events which occurred in the residence and in the car ride to Omaha.

## LEGAL ANALYSIS

Landin asserts the affidavit for the search warrant lacked sufficient probable cause for the issuance of the warrant and Landin was not properly advised of his *Miranda* rights before making any statements.

### A. Search Warrant

An affidavit for a search warrant must contain probable cause of four ingredients: time, crime, objects, and place. 2 Wayne R. LaFave, *Search and Seizure*, § 3.7(d) at 412 (4th ed. 2004). As the Supreme Court stated in *Illinois v. Gates*, 462 U.S. 213, 238 (1983): "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* Thus, when viewing a search warrant, the court must look at the totality of the circumstances set forth in the affidavit. **See** *id.*; *United States v. Etheridge*, 165 F.3d 655, 656 (8th Cir. 1999). "The duty of the judge issuing a search warrant is to make a 'practical, common-sense decision' whether, considering all the circumstances, a reasonable person could have reason to suspect that evidence would be discovered. . . . Probable cause is a fair probability that contraband evidence of a crime will be found in the location to be searched." *United States v. LaMorie*, 100 F.3d 547, 552 (8th Cir. 1996). **See** *also Gates*,

462 U.S. at 238; **United States v. Coleman** 349 U.S. 1077, 1083 (8th Cir. 2003). In this case there was a plethora of probable cause set forth in the affidavit based upon the wire interceptions involving Landin and the residence at 919 South 6th Street in Norfolk, Nebraska.

Even assuming *arguendo*, that probable cause was lacking in sufficiency, the **Leon** good faith exception would allow the admissibility of the evidence seized. **See United States v. Leon**, 468 U.S. 897 (1984). In **Leon**, the Supreme Court held that "evidence obtained pursuant to a search warrant should not be excluded where the officers executed the warrant 'with an objectively reasonable reliance on the magistrate's determination of probable cause.'" **LaMorie**, 100 F.3d at 555. There are four exceptions to this good faith rule:

> (1) where the issuing judicial officer was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth; (2) where the issuing officer "wholly abandoned his judicial role;" (3) where the affidavit supporting the warrant contained so few indicia of probable cause "as to render official belief in its existence entirely unreasonable;" and (4) where the warrant itself is so facially deficient that no executing officer could reasonably presume it to be valid.

*Id.* (internal citations omitted). None of those exceptions are present in this case.

### B. Landin's Statements
### 1. Questioning Upon Entry Into the Residence

Immediately after the police officers' entry into the residence and before being advised of his **Miranda** rights, Landin was asked if there was anything dangerous to the officers in the house. Landin stated there was a gun in the closet. At the time of the question, Landin had been directed to the floor after officers burst into the house with weapons drawn. Contemporaneously, Landin was handcuffed. "A **Miranda** warning must precede any custodial interrogation. A custodial interrogation involves questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." **United States v. Chamberlain**,

163 F.3d 499, 502 (8th Cir. 1999) (**citing *Miranda v. Arizona***, 384 U.S. 436 (1966)). "Custody occurs either upon formal arrest or under any other circumstances where the suspect is deprived of his freedom in any significant way." ***United States v. Griffin***, 922 F.2d 1343, 1347 (8th Cir. 1990). "In determining whether an individual was in custody, a court must examine all of the circumstances surrounding the interrogation, but the ultimate inquiry is simply whether there [was] a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." ***Thatsaphone v. Weber***, 137 F.3d 1041, 1044 (8th Cir. 1998) (**citing *Stansbury v. California***, 511 U.S. 318, 322 (1994)). From the totality of the circumstances, the court finds Landin was in police custody at the time of the question was put to Landin about any dangerous items in the residence.

However, the government asserts that the question as to whether there was anything dangerous in the premises falls within the safety exception to the ***Miranda*** rule. "Under that exception, a suspect's answers to questions from a police officer are admissible in the absence of a ***Miranda*** warning so long as the questions asked of the suspect are 'reasonably prompted by a concern for the public safety.'" ***United States v. Williams***, 181 F. 3d 945, 953 (8th Cir. 1999) (**citing *United States v. Lawrence***, 952 F.2d 1034, 1036 (8th Cir. 1992) [**quoting *New York v. Quarles***, 467 U.S. 649, 656 (1984)]). In ***Williams***, the defendant stated that there was a gun in the closet in response to "is there anything we need to be aware of?" by searching officers. The Court finds the officer's question to Landin about anything dangerous in the residence falls within the public safety exception to the ***Miranda*** rule, and Landin's response is therefore admissible in evidence.

### 2. Interrogation in the Bedroom

The touchstone for the admissibility of a defendant's statements is voluntariness. ***Brown v. Mississippi***, 297 U.S. 278 (1936). The court must look to the totality of circumstances in determining whether or not the statements were voluntary. ***Mincey v. Arizona***, 437 U.S. 385 (1978); ***Colorado v. Connelly***, 479 U.S. 157 (1986); ***Schneckloth v. Bustamonte***, 412 U.S. 218 (1973). In this case, Landin was advised of his constitutional rights in Spanish pursuant to ***Miranda***. There is no evidence Landin did not understand the advice of rights. Even though Landin was advised of his ***Miranda*** rights, the court must

examine the conduct of the law enforcement officials to determine whether or not there was an overreaching by law enforcement officials amounting to coercive police activity because coercive police conduct will render a confession inadmissible. **Blackburn v. Alabama**, 361 U.S. 199 (1960). The court must consider the totality of the circumstances, including the specific interrogation tactics employed, the details of the interrogation, and the characteristics of the accused. **Schneckloth**, 412 U.S. at 225-26. Coercive police pressure is a predicate to the finding that the confession is not voluntary and violates the accused's due process rights. **Connelly**, 479 U.S. at 167. However, any police questioning has coercive aspects to it simply by reason of the confrontation. The police officer is part of the law enforcement system that will cause a charge to be made against a suspect. The questioning by a police officer, while uncomfortable, is not coercive *per se*. **See** *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977).

Landin was advised of his *Miranda* rights in Spanish before being questioned by Agent Beninato in the bedroom following the officers' entry into the residence. Landin waived those rights and answered Agent Beninato's questions. Landin was not threatened nor forced to answer the questions. The Court finds from the totality of the circumstances that Landin's statements were made voluntarily and are admissible against him at trial.

### 3. Statements Made During the Transportation to Omaha

Landin argues the statements he made to law enforcement while seated in the back seat of the police vehicle while being transported to Omaha should be suppressed. "Interrogation in the *Miranda* context refers to express questioning and to words or conduct that officers should know is 'reasonably likely to elicit an incriminating response from the suspect.'" **United States v. Briones**, 390 F.3d 610, 612 (8th Cir. 2004) (**quoting *Rhode Island v. Innis***, 446 U.S. 291, 301 (1980)). "*Miranda* does not protect an accused from a spontaneous admission made under circumstances not induced by the investigating officers or during a conversation not initiated by the officers." **Butzin v. Wood**, 886 F.2d 1016, 1018 (8th Cir. 1989) (quotation omitted). Landin's statements were spontaneously made and not the product of any interrogation by Agent Beninato. Furthermore, Landin had been advised of his *Miranda* rights while at the residence prior to being transported

6

to Omaha. Landin's statements made during the transportation from Norfolk to Omaha are admissible in evidence.

**IT IS RECOMMENDED TO JUDGE LAURIE SMITH CAMP that:**

Pablo Reza Landin's Motion to Suppress (Filing No. 185) is denied.

### ADMONITION

Pursuant to NECrimR 57.3 any objection to this Report and Recommendation shall be filed with the Clerk of the Court within ten (10) days after being served with a copy of this Report and Recommendation. Failure to timely object may constitute a waiver of any objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

DATED this 30th day of March, 2006.

BY THE COURT:

s/Thomas D. Thalken
United States Magistrate Judge